[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 244 
In view of the situation of the testator's property and the manner in which it had been occupied and used, up to the time of his decease, we think it quite clear that the meadow and wood-land referred to in the devise to his son Abraham, are the wood lot now in dispute and the piece of salt meadow which had been used with the farm, *Page 245 
and not the meadow and wood-land which were embraced within the farm boundaries. Those would necessarily pass with the devise of the farm, without special mention. The wood-land on the homestead farm was surrounded on three sides by other land of the testator, and wholly within the lines of the homestead farm. The testator could not have deemed it important to mention that wood-land when he was devising the entire farm; and if he had undertaken to mention it, it can hardly be conceived that he would have expressed himself so inaccurately as to describe it as "attached" to the farm, in the midst of which it lay and within whose boundaries it was inclosed.
The argument drawn from the use of the word "cultivate," strikes us as unsound. This word was evidently used by the testator to designate the homestead farm, "the farm on which I now live and cultivate," and to distinguish it from the Cripplebush farm, which was occupied by his sons Francis and Volkert, and the forty-four acres of land at Cross Roads, which were not occupied. It would be a very forced construction to say that the testator understood the devise of "the farm upon which I now live and cultivate," as carrying only the land actually under cultivation within the farm inclosure, and that, consequently, he deemed it necessary to add, specifically, the wood-land and meadow within the same inclosure.
We are satisfied that the language of the will bears no such construction, and that the wood-land referred to is not the wood-land contained within the bounds of the homestead farm, but the wood lot in question, which was separately fenced. There is no other land to which the language of the devise is applicable; and we think this lot is sufficiently designated. It lay in close proximity to the farm, being within about 200 yards therefrom, and had always been used with it for the purpose of supplying the homestead farm with fuel and fencing, and was connected with it by a private way over the intervening land of Suydam, which privilege had been obtained for the express purpose of affording a more convenient *Page 246 
communication between it and the farm than formerly existed.
It is not easy to select a single word which will express the precise nature of the relation existing between these two parcels of land. The wood lot was not strictly appurtenant to the farm, because one piece of land cannot be an appurtenance to another. It was not adjoining or adjacent, because the land of Suydam intervened. It was, however, connected in its use, and communicated with the farm. The testator selected the word "attached" as the most appropriate. Under the circumstances and in the connection in which it is used this term does not necessarily require that the wood lot be physically attached to the farm, but its sense is fulfilled by showing that the lot was a sort of accompaniment to the farm, and used in connection with it for the convenience of its occupants, and so associated in this use that it ought not to be separated, in ownership or occupation, from the farm, but should pass with it when it changed hands.
It is worthy of observation that, unless applied to this wood-land, the words "attached to it" are wholly superfluous and without meaning or operation. If the testator meant only the meadow and wood-land on the farm, why should he distinguish them from the "messuages thereon?" He would have said the farm, etc., and the meadow, wood-land and messuages thereon.
The fact is referred to that about an acre and three-quarters of this wood-land was cleared, and a house erected thereon. This circumstance is not inconsistent with the interpretation which we think should be given to the devise. The devise is so framed as to include messuages on the wood lot as well as on the farm. It devises the farm, etc., "and the meadow and wood-land attached to it, together with the messuages thereon." This language is quite suggestive, and is capable of the interpretation that it was framed with express reference to the existence of a messuage on the wood lot. Otherwise the natural frame of the sentence would have been: the *Page 247 
farm, etc., "together with the messuages thereon, and the wood-land and meadow attached to it."
I find no conflict in respect to any material fact in the case which required that it be submitted to the jury. The extrinsic facts being uncontroverted, it is the duty of the court to interpret the language of the will as read in the light of those facts. The construction of the language is not for the jury but for the court, and where the intent of the testator is to be ascertained from his language alone, or from his language and surrounding circumstances about which there is no dispute, a question of law and not of fact is presented.
The judgment should be reversed and a new trial ordered, with costs to abide the event.
All concur, except CHURCH, Ch. J., who concurs in result on the ground that it should have been submitted to the jury to find whether the wood-land and meadows were attached to the farm.