**504**

In the Matter of the Construction of the Will of NATHANIEL POTTER, Deceased. FRED J. MUNDER et al., as Acting Successor Trustees under the Will of NATHANIEL POTTER, Deceased, et al., Appellants; ETHEL F. YOUNG, Individually and as Executrix of BERTHA L. YOUNG, Deceased, et al., Respondents.

Argued April 12, 1954; decided July 14, 1954.

*William L. Storey* and *John M. Lockwood* for trustees, appellants.

*Nathaniel L. Goldstein, Attorney-General (Abe Wagman* and *Wendell P. Brown* of counsel), in person, for Nathaniel L. Goldstein, appellant. The dominant purpose expressed in the will is to make an education more readily available to those otherwise financially unable to avail themselves thereof. Testator's citation of the academy was simply an expression of desire as to the facility to be used in carrying out this general charitable purpose. The trust did not *ipso facto* fail when the academy went out of existence. (*Matter of Neher,* 279 N. Y. 370; *Matter of Harrington,* 245 App. Div. 252; *Matter of Tiffany,* 157 Misc. 873; *Matter of Robinson,* 203 N. Y. 380; *Matter of Durbrow,* 245 N. Y. 469; *Matter of Dillenback,* 189 Misc. 538, 273 App. Div. 1051; *Graff* v. *Harrington,* 137 Misc. 712; *Matter of Lawless,* 194 Misc. 844, 277 App. Div. 1045; *Williams* v. *Williams,* 8 N. Y. 525.)

*John Clark Toaz* for Union Free School District No. 3 of the Town of Huntington, appellant. I. The trust set up under the will of Nathaniel Potter expresses a paramount purpose of educating the children of the poor. This is a general charitable purpose. This purpose exists today even as it did when the testator died. II. The legislative act of 1870 recognizes the

existence of a valid trust for a general charitable purpose and is not unconstitutional. III. The case at bar is not one for the application of the doctrine of cy pres. The purpose of the trust still exists. The only question is the procedure for the application of the income. (*Williams* v. *Williams,* 8 N. Y. 525; *Trustees of Sailors' Snug Harbor* v. *Carmody,* 158 App. Div. 738, 211 N. Y. 286; *Saltsman* v. *Greene,* 136 Misc. 497, 231 App. Div. 781, 256 N. Y. 636.) IV. The school district continues to be a proper instrumentality for carrying the testator's general charitable purpose into effect. If the trustees are correct in their position that the payment of the income under the statute of 1870 does not fulfill the purpose of the trust, then the payment should be made to the school district in such a way as to effectuate the testator's intent. .

*Richard C. Cotter,* special guardian for infants, incompetents, or unknown heirs at law, respondents, and *Charles H. Street* for Ethel F. Young, respondent. I. The trust was for a specific and not for a general charitable purpose. When the Huntington Academy went out of existence in the year 1858, the purpose of the trust failed, and all beneficial interest in the trust fund thereupon vested in the next of kin of testator. (*Hart* v. *Socony-Vacuum Oil Co.,* 291 N. Y. 13; *Matter of Thompson,* 217 N. Y. 111; *Williams* v. *Williams,* 8 N. Y. 525; *Morris* v. *Sickly,* 133 N. Y. 456; *Matter of Chamberlin,* 289 N. Y. 456; *Matter of Hoffman,* 201 N. Y. 247; *Matter of Watson,* 262 N. Y. 284; *Matter of Buechner,* 226 N. Y. 440; *Herzog* v. *Title Guar. & Trust Co.,* 177 N. Y. 86; *Matter of Durand,* 250 N. Y. 45; *Matter of Tamargo,* 220 N. Y. 225.) II. Prior to 1893 the cy pres doctrine had no existence in the jurisprudence of this State. Chapter 701 of the Laws of 1893 (Personal Property Law, § 12), which confers certain cy pres powers on the Supreme Court and Surrogate's Courts, has no application in this case. (*Beekman* v. *Bonsor,* 23 N. Y. 298; *Bascom* v. *Albertson,* 34 N. Y. 584; *Holmes* v. *Mead,* 52 N. Y. 332; *Holland* v. *Alcock,* 108 N. Y. 312; *Tilden* v. *Green,* 130 N. Y. 29; *People* v. *Powers,* 147 N. Y. 104; *Murray* v. *Miller,* 178 N. Y. 316; *Butler* v. *Trustees,* 92 Hun 96; *Saltsman* v. *Greene,* 136 Misc. 497, 231 App. Div. 781, 256 N. Y. 636; *Matter of Merritt,* 280 N. Y. 391.) III. The Act of 1870, in reliance upon which the trustees have made payments of the annual income of the fund to the appellant Union Free School District No. 3 of the Town

of Huntington and its predecessor, the Union School District of Huntington, was invalid so far as the fund here in question is concerned. (*White* v. *Howard*, 46 N. Y. 144; *Matter of Pell*, 171 N. Y. 48; *Murray* v. *Miller*, 178 N. Y. 316; *Dammert* v. *Osborn*, 140 N. Y. 30; *People* v. *Powers*, 147 N. Y. 104; *People ex rel. McDonald* v. *Keeler*, 99 N. Y. 463.) IV. If all beneficial interest in the trust fund did not vest in the next of kin of the testator in 1858, when the academy went out of existence, it vested in such next of kin at the latest in the year 1872 when the trustees made their first payment of income on the fund to the Union Free School District of Huntington. Such payment was a diversion of income prohibited by the will. V. The rights of the respondents have not been lost by laches. (*Matter of Canfield*, 165 Misc. 66.)

CONWAY, J. The facts here are not in dispute. On November 21, 1841, one Nathaniel Potter died, leaving a will which had been executed on November 9, 1841. During his lifetime the decedent had been one of the founders of a private educational institution situated in the town of Huntington, N. Y., and known as the Huntington Academy. That academy had been organized in about 1793, and it continued to function until 1858, when the Union School District purchased it and the land on which it stood, and the building was then torn down. The Union School District then purchased one and one-half acres of the land adjoining the academy and erected a new school building on that enlarged parcel of land.

In his will, after providing for a niece and a nephew, the testator made a gift in trust for the support of a minister and then made the following provision, which we shall incorporate herein in full in order that no meaning may be lost in a paraphrase of it.

" *With a desire to raise the standard of intellectual and moral improvement among the poor*, I constitute and appoint Zophar B. Oakley, John Wood and Charles Stinges of the Village of Huntington and their successors to be appointed in the manner hereinafter authorized, a board of trustees of a fund which I hereby constitute for the *exclusive education of the children of the poor* and in order to maintain the number of the said trustees *in perpetuity*, I hereby authorize the

surviving or remaining trustees to fill up any vacancy as often as it shall occur by death resignation or removal from the village of any of the said trustees by the choice of another to be entered on the minutes of their proceedings.

" I give and bequeath to the above named trustees · and their successors appointed as aforesaid the sum of six thousand dollars in trust for a *perpetual fund for the education of the children of the poor who shall be educated in the academy* in the village of Huntington or in case of the destruction of the academy by fire or otherwise then in the school house next west of the academy untill [*sic*] it shall be rebuilt — no part of this fund ever to be appropriated to the erection or repair of buildings.

" It is my will that this fund shall be managed in manner following to wit the principal to be loaned on bond secured by mortgage on lands of twice the value of the sum loaned and one half of the interest annually accruing to be added to the principal until the whole fund amounts to the sum of ten thousand dollars — the other half of the interest to be appropriated and expended in the *education of the children of the poor* — and when the said fund by the addition of the interest as aforesaid shall amount to the said sum of ten thousand dollars then it is my will that the whole interest of the said fund shall be annually appropriated and expended in the *education of the poor in the academy* in the village of Huntington — It is my will that the instruction shall be limited to a good english education and shall be extended to the *children of the poor of every description* without discrimination of denomination or complexion — in order to prevent any doubt respecting *the degree of poverty of the parents whose children are intended to be benefitted by this institution,* it is my intention that the children to be educated on this fund shall be such whose parents names are not on the tax list — and if the interest annually accruing shall be more than sufficient for this purpose that in such case the surplus shall be expended on the education of children whose parents stand lowest on the tax list untill [*sic*] the whole is absorbed. It is *not my intention to deprive these children of any interest they may have in the common school* money but that the *fund* hereby constituted

*shall be forever kept separate and* distinct from that and he
[*sic*] employed in furtherance of and beyond that fund and
that *no trustee or commissioner of common schools shall ever
be a trustee of this fund.* It is my will that the said trustees
shall keep a regular account of the said fund and a register
of the names and number of the children benefited by the said
interest and shall annually on a given day in every year exhibit
a statement of the fund and of their proceedings to a committee
consisting of one suitable person to be chosen by each of the
churches in the village of Huntington to examine the same who
it is my desire shall give all the aid in their power to the said
trustees in the executing — their duties. As this fund is purely
of a charitable nature it is hoped that the said trustees will
render their services gratuitously or at least will be satisfied
with a reimbursement of their necessary expenses.

" *Any diversion of this fund* or interest *from the exclusive
education of the children of the poor* shall be deemed a for-
feiture of the trust and in such case I bequeath the monies
constituting the said fund to those to whom I bequeath the
residue of my estate. If the powers of the board of trustees
herein constituted shall prove insufficient for the execution of
the duties of the trust, it is my will that they shall make applica-
tion for a special act of incorporation to enable them to give
complete effect to my intentions as above stated. It is my will
that the children and grandchildren of my nephews & nieces
educated at the academy shall be educated out of this fund.
After the decease of my niece I give and bequeath the said
two thousand dollars of which she is to have to the use or
the surplus thereof to the trustees of the *fund for the educa-
tion of the children of the poor* to be put at interest as the
monies of that fund are directed to be put and it is my will
that the said trustees shall annually appropriate the interest
of one thousand dollars to the aid and relief of such neces-
sitous persons or families as are not on the town to be dis-
tributed in their sound discretion for ever hereafter.

" The remainder to be added to the *fund for the education
of the children of the poor* and the interest applied in the same
manner as the interest of that fund." (Emphasis supplied.)

The present proceeding was commenced by a verified petition dated February 19, 1949, wherein the successor trustees to the trustees named in the will prayed for a construction of the will and a direction as to the application of the funds involved. Those petitioner trustees expressed the view that the children of the poor presently receive the same educational benefits as the well-to-do on the primary and secondary school levels in Huntington, and suggested that the funds could be employed to enable one or more needy children to obtain a higher education than high schools. The school district has taken the position that such a direction is unnecessary inasmuch as there are still certain expenses incident to attendance at high school which must be met by the students themselves or their parents, and that such expenses may *still* prevent children of the poor from completing high school.

Appellants have based their entire appeal upon the premise that the trust was not limited to education of the children of the poor at the academy alone, but that decedent had a general charitable intent to assist the needy children, with a *preference* that they be educated at the academy of which the testator was a founder.

Respondents have argued (a) that the trust involved was for a specific, not a general charitable purpose, and that that purpose failed when the academy went out of existence in 1858 and the trust thereupon ended, (b) that there was no cy pres doctrine in New York prior to the Tilden Act of 1893, and that that act is not applicable here, (c) that the Act of 1870 — which enabled the Union Free School District herein to receive funds under this particular trust — was invalid, (d) that — assuming the trust did not end when the academy ceased to exist — payment of the trust moneys to the Union Free School District constituted such a diversion of the funds as to end the trust under the terms of the will, and (e) that the respondents have not been guilty of laches.

The Surrogate held that the trust failed when the academy was absorbed into the common school system, and that the testator's next of kin are entitled to the fund.

The precise trust involved in the present case came before this court over one hundred years ago, in *Williams* v. *Williams* (8

N. Y. 525) decided in October, 1853. The parties before us then were the residuary legatees — predecessors in interest of the present respondents, as well as the predecessors in interest of the present trustees (pp. 526, 529). Insofar as some of the present litigants succeed to the interests of parties to the *Williams* case (*supra*), they are foreclosed from relitigating such issues as were decided in that case (see *Rivara* v. *Stewart & Co.*, 241 N. Y. 259, 266–267; *Morris* v. *Henry*, 221 N. Y. 96). If it were litigated and if we decided in 1853 that this trust for the education of the children of the poor was a trust for a *particular* charitable purpose, then insofar as the doctrine of *res judicata* binds the present trustees and the respondents, that issue would not be before us now. The Attorney-General and the Union School District were not, apparently, represented in court in the *Williams* case, and thus they are not precluded from litigating any issues here.

The opinion in the *Williams* case (*supra*) indicates that we were faced with two principal objections to the trust for needy children (1) that the beneficiaries were a class whose membership changed from time to time, and (2) that the trust was not limited by lives in being, but was in the nature of a perpetuity (pp. 529, 540). We said that, unless the doctrine of charitable uses and trusts applied here, the trust for education would fall because of those objections (*id.*, p. 540). After reviewing the history of the doctrine of charitable trusts, we decided that that doctrine was in effect in this State. Although doubtful " whether we could proceed upon the notion of approximation, where it is impossible to execute the gift, substantially according to the terms of the grant or devise ", we held that " Where the gift is capable of being executed by a judicial decree * * * [we] know of no reason why the court should refuse to execute it " (p. 548). We said that it was unnecessary to employ the cy pres doctrine, since we decided that (1) there were trustees capable of taking the funds in the first instance and provision made in the will for their replacement, (2) the beneficiaries were *readily ascertainable* and practically limited as a class to the children of the poor residents of Huntington, and (3) the purpose of the trust was sufficiently definite. With respect to that last point, Judge DENIO wrote:

" The trust is for the education of the children of the poor, at a particular institution of learning, which I presume to be an incorporated academy   *   *   * " (p. 549).   Our principal discussion revolved around the issue whether the *beneficiaries* — not the *purpose* — were so indefinite that the trust would be unenforcible by judicial decree.   We were satisfied that the purpose — providing a " good English education ", such as the academy was giving, to the children of a *specified* group of readily ascertainable poor persons in a limited locality — was definite enough so that the trust could be enforced.   Whether that was a *general* or a *particular* charitable purpose it was *unnecessary* for us to determine then inasmuch as the purpose was clear, and the means or instrumentality suggested by the testator for carrying out that purpose — i. e., the academy — was then in existence.   It was not until 1858, when the academy went out of existence, that the precise issue arose which is now before us: was this trust intended to be limited in duration to the period of the continuance of the academy?   As we read the *Williams* case, we did *not* hold that this trust for education was limited in time to the period of existence of a *particular* institution.

The parties who litigated the *Williams* case (*supra*) apparently did not continue or resume their attack on the trust therein involved until the present construction proceeding between their successors in interest.   The opinion itself, however, has had a famous though troubled history in this court. Although subsequent to our decision in *Williams* v. *Williams* we reiterated the statement of Judge DENIO that the principles governing charitable trusts were in force in New York (see *Leonard* v. *Burr,* 18 N. Y. 96), our opinions demonstrated a tendency to restrict the applicability of those principles.   (See *Owens* v. *Missionary Soc. of M. E. Church,* 14 N. Y. 380; *Trustees of Theological Seminary of Auburn* v. *Kellogg,* 16 N. Y. 83; *Beekman* v. *Bonsor,* 23 N. Y. 298; *Downing* v. *Marshall,* 23 N. Y. 366.)   It seems, moreover, that there was a group of persons opposed to the doctrine of charitable uses and trusts, and who sought to prevent that doctrine from continuing in New York.   (See opinion of Chief Judge PARKER in *Allen* v. *Stevens,* 161 N. Y. 122, in which the struggle to abolish chari-

table uses and trusts is traced.) Thus, in *Levy* v. *Levy* (33 N. Y. 97) we stated that charitable uses and trusts had been abolished in New York by the Revised Statutes. Similarly, in *Bascom* v. *Albertson* (34 N. Y. 584) we restated our belief that charitable uses could not exist in this State, at the same time attempting to distinguish the *Williams* case by pointing out that in that case we had found the purpose and the beneficiaries of the trust sufficiently definite and limited to enable the trust to be enforced by judicial decree. We made no such attempt, however, in *Holmes* v. *Mead* (52 N. Y. 332, 338), where we said that the *Williams* case had been " disaffirmed and overruled ", and that perpetual trusts for charities were not permitted in this State. After quoting the statute (Rev. Stat. of N. Y., part II, ch. I, tit. II, § 45) — " Uses and trusts, except as authorized and modified in this article, are abolished " — we wrote that : " The statute abolishes all uses and trusts, and thus leaves the courts no discretion. All trusts, except those specifically saved, are grouped together and prohibited. The trusts retained are four in number, and are active trusts for special, temporary purposes in the interest of individuals. They do not include perpetual trusts for charity, or for the benefit of classes or of corporations " (p. 339).

Following the *Holmes* case (*supra*) the decisions of this court were fairly consistent in adhering to the theory that charitable uses and trusts were void in New York. (See cases cited in *Allen* v. *Stevens,* 161 N. Y. 122, 139–140, *supra.*) In 1893, however, the Legislature passed what has come to be known as the Tilden Act (L. 1893, ch. 701, now Personal Property Law, § 12). That law, the respondent has conceded, " was intended to restore the doctrine of the *Williams* case that the provisions of the Revised Statute forbidding perpetuities do not apply to charitable trusts * * *." It is clear, therefore, that the *Williams* case (*supra*) held that charitable trusts had not been abolished by the Revised Statutes, and that the Legislature in 1893 approved of that rule. That conclusion of legislative approval is further strengthened by the fact that in 1870 an act was passed by the State Legislature for the specific purpose of empowering the Union Free School District of Huntington to receive funds from the trust set up by Potter if the trus-

tees wished to give them (L. 1870, ch. 306). It was an *enabling* act, but that act was enacted, necessarily, upon the assumption that the trust for education of the children of the poor was in force and effect, and that depended upon the applicability of the doctrine of charitable uses and trusts. Hence the Legislature in 1870 impliedly assented to the ruling of the *Williams* case that charitable trusts and the rules relating thereto were in effect in New York.

As we have already pointed out, the *facts* here are not in dispute. The intention of the testator in creating the trust for the children of the poor is, therefore, a question of *law* and not one of fact, for as we declared in *Underhill* v. *Vandervoort* (56 N. Y. 242, 247): '' The extrinsic facts being uncontroverted, it is the duty of the court to interpret the language of the will as read in the light of those facts. The construction of the language is not for the jury but for the court, and where the intent of the testator is to be ascertained from his language alone, or from his language and surrounding circumstances about which there is no dispute, a question of law and not of fact is presented.''

When we first considered the will, in *Williams* v. *Williams* (*supra*), we determined that the settlor had intended that the funds in the hands of the trustees be used for the education of the children of the poor. The precise issue *now* before us is whether, when we made that finding, we precluded a further clarification of the testator's intent. In other words, may we now say that when Potter executed this will he intended that the children to be benefited by the fund be educated *only* at the academy, or did he intend a broader purpose for the trust moneys?

In the *Williams* case (*supra*), Judge DENIO, after considering the English doctrine of charitable uses and trusts, said that in *this* case there was no necessity for an application of the cy pres rule. He reached that conclusion because, in his opinion, the trustees, the beneficiaries and the purpose of the trust were sufficiently definite so that this trust could be enforced by judicial decree (*Williams* v. *Williams, supra,* p. 549). Our language relevant to the purpose of the trust was as follows (*ibid.*): '' The trust is for the education of the children of the poor, at a particular institution of learning, which I presume to be an incorporated academy  *  *  *.''

That language of Judge Denio which was dictum merely must be read against the background of the will. The first mention made in the will of this fund for education appears in the paragraph commencing: " With a desire to raise the standard of intellectual and moral improvement among the poor, I constitute and appoint  *   *   *  a board of trustees of a fund which I hereby constitute for the exclusive education of the children of the poor and in order to maintain the number of said trustees  *   *   *."

In that passage of his will the testator did not say that he intended to limit the benefit of the education he was financing to any particular institution. He omitted the qualifying words " at the academy " from that provision just as he did from a subsequent provision of the will wherein he directed that the trust was to end if ever any part of the fund was diverted from the exclusive education of the children of the poor. Likewise, although he referred to the education of the children of the poor and education of the poor on *seven* different occasions in that portion of the will relating to this trust, the testator qualified those references with mention of the academy on but *two* occasions. The first of these was in that paragraph wherein he gave to the trustees and their successors $6,000 " in trust for a perpetual fund for the education of the children of the poor who shall. be educated in the academy  *   *   *." The other occasion was in the next paragraph of the will, in which the decedent gave instructions regarding payments from the fund. In that paragraph he first referred to " the education of the children of the poor  *   *   * " *without* mention of the academy, then he referred to " the education of the poor in the academy in the village of Huntington ". That was merely descriptive of a place where education was being furnished. It did no more than indicate a wish or preference. From those two references we cannot conclude as a matter of law that this ·trust was limited to assisting in the education of needy children only at the academy. Constantly throughout that part of the will relating to this trust the decedent referred to *children,* and to the *education of children* — specifically, on thirteen different occasions — whereas the academy was mentioned by name but

five times, and only two of those times were instances from which the respondents might draw their conclusion that this trust was limited to the lifetime of the academy. Furthermore, the testator indicated on at least three separate occasions in the part of the will dealing with this trust that he intended that trust to be *perpetual*. He also indicated that, if the academy burned, the funds were to be used at the school next west of the academy.

In *Matter of Pattberg* (306 N. Y. 835) we acted upon a principle which has long guided this court — that where a testator has apparently sought to leave money for a charitable purpose, a liberal construction is to be given to the terms of the will in order to uphold it and validate the bequest. The entire applicable portion of the will must be read and considered, and not merely isolated segments, and the intent is to be gleaned from that complete consideration (see, also, *Matter of Pepper,* 307 N. Y. 242; *Matter of Neher,* 279 N. Y. 370). In the present case it is clear that, when read in the light of these principles, the testator here intended to provide a never-ending source of financial aid to needy students without limiting that charitable purpose of the funds to the lifetime of any specific institution. There are numerous references to children, the poor and their education, without mention of the academy in the same clause. The references to the academy are such that the more reasonable conclusion is that the testator hoped and expected that the education of the needy children would be at the academy rather than elsewhere. The decedent, who was one of the founders of the academy, might be expected to make some provision for it in his will and to wish that the children of the poor for whom he was making provision by the trust funds would be educated in that academy. Thus at one and the same time he would provide for the education of needy children who might otherwise be unable to attend school, and he would also be providing a source of income to the academy at which those children would incur the expenses that the fund was intended to defray. We do not think we can say, however, as a matter of law, that we must construe the language of the will, in view of our discussion of the clauses in it (*supra*) to mean that the continued existence

of the academy was to be a condition precedent to the continued education of the children of the poor. The continued existence of children of the poor was a certainty, when considered in the light of history. The continuance of an academy in a town into perpetuity was problematical, to put it mildly. The desire of testator to aid and educate the children of the poor would continue despite the fact that a particular educational institution in the town had ceased to function — otherwise the testator would have said so as clearly and possibly as repetitiously as were his expressions of his wish to aid in the education of the children of the poor.

The only question passed upon by the courts below was whether or not Nathaniel Potter was motivated by a general charitable intent when he provided in his will for the creation of this trust for the education of the children of the poor. Those courts held that he was not motivated by such an intent. Accordingly, the courts below found it unnecessary to determine any other question. We, on the other hand, have concluded that this testator did have such a general charitable intent. Therefore, the case must be sent back to the Surrogate's Court in order that other issues, if any, not previously passed upon may be determined and so that it may also be determined to what purposes the trust funds shall now be put.

The order of the Appellate Division and the decree of the Surrogate's Court should be reversed, and the matter remitted to the Surrogate's Court for further proceedings not inconsistent with this opinion, with costs to abide the event.

Lewis, Ch. J., Desmond, Dye, Fuld, Froessel and Van Voorhis, JJ., concur.

Order reversed, etc.