Van Voorhis, J.
This appeal by St. Thomas Church in New York City is from an affirmance of a decree of the Surrogate’s Court construing the will and codicil of the late George S. Scott and applying the cy pres doctrine thereto. It raises questions whether a bequest to this religious corporation was absolute, and, if not, whether the purposes of the testator as expressed in his testament have been followed or ignored in the variance which has been made by cy pres in the disposition of the gift which the decedent directed. Inasmuch as the subject assets have been transferred to New York where St. Thomas Church was incorporated, both sides have treated the law of New York State as controlling. Upon the death of the last life income beneficiary, in default of lineal descendants, the testator gave the remainder “ to the Rector, Church Wardens and Vestrymen of St. Thomas’ Church in the City of New York, for the purpose of erecting and maintaining, in such place as they may select, a building or buildings for the care of persons suffering from tuberculosis, to be called the Scott Memorial Home.”
*424 The petition by the corporate testamentary trustee alleges that the last income beneficiary died December 18, 1957 and that a question is presented concerning the construction and effect of the will and codicil relative to whether the said property vests in St. Thomas Church absolutely and without restriction. A letter from St. Thomas Church is incorporated in the petition stating that its position is that the fund vested absolutely in the church and that the language of the bequest is precatory only that a building or buildings be erected and maintained for the care of persons suffering from tuberculosis. In addition St. Thomas Church stated in this letter that the need for home's for the care of persons suffering from tuberculosis has precipitously declined during the course of the years since the death of George S. Scott in 1912, and that the principal of the said residuary would not in any event be sufficient at this time to cover the cost of erecting and maintaining such a building. The letter concludes by stating that it is accordingly the belief of the vestry that, consistent with the intent of George S. Scott, the church should use the fund by expending not to exceed $600,000 for the purpose of adorning and completing the Fifth Avenue facade of the church’s gothic building, the carillon tower and the 53rd Street side, placing a Scott memorial plaque at the Fifth Avenue entrance; and by holding the balance of the principal as part of the church endowments in a separate fund to be known as the Scott Memorial Fund, expending so much of the income therefrom as might be needed from time to time for the proper maintenance and repair of the said improvements to the church building and the balance to be devoted to general charitable uses in the discretion of the vestry. The present value of the fund is approximately $1,600,000. The answer of St. Thomas Church stated its position as thus expressed in its letter to the testamentary trustee incorporated in the petition, and further alleged absolute and unconditional assignments to St. Thomas Church by the lineal descendants of George S. Scott, their distributees, devisees and legatees. This answer further alleged that, if it were to be held that the church is not at liberty to use this fund for its general corporate purposes, the cv pres powers of the court should be exercised as stated in the letter inasmuch as it has become impractical and impossible to use the principal of the residuary trust for the purpose stated.
*425 The assignment to St. Thomas- Church of all right, title and interest by the beneficiaries of George S. Scott and their successors may have indicated what they thought to have been his intent, but could not supersede the responsibility of the Attorney-General to act under sections 12 of the Personal Property Law and 113 of the Real Property Law. Although the legacy vests in St. Thomas Church under the will and codicil, it must be devoted to the uses stated in the testament unless modified by cy pres (St. Joseph’s Hosp. v. Bennett, 281 N. Y. 115; Matter of Lawless, 194 Misc. 844, affd. 277 App. Div. 1045, motion for leave to appeal denied 302 N. Y. 949). Situations where a charitable gift fails on account of lack of qualified beneficiaries (Holmes v. Mead, 52 N. Y. 332, overruling Williams v. Williams, 8 N. Y. 525, insofar as it upheld the law of charitable uses as it existed in England at the time of the Revolution), are not to be confused with decisions such as Wetmore v. Parker (52 N. Y. 450), where the gift is to a religious or charitable corporation. The difference is between charitable gifts that fail for lack of beneficiaries and those which are upheld by reason of the identifiable nature and capacity to take of a corporation. Where a charitable gift was to a corporation but restricted to designated uses, the restriction has always been enforced (Bird v. Merklee, 144 N. Y. 544; Matter of Griffin, 167 N. Y. 71, see opinion by Cullen, J., pp. 82-84, concurred in by the majority; Matter of Durand, 194 N. Y. 477). The cy pres rule, to be sure, went out of existence with the charitable trust doctrine, but was reinstated with it by the Tilden Act in 1893 (L. 1893, ch. 701; Allen v. Stevens, 161 N. Y. 122), and applies to gifts to charitable corporations as well as to what are charitable trusts in the technical sense (Sherman v. Richmond Hose Co., 230 N. Y. 462; Matter of Gary, 248 App. Div. 373, affd. 272 N. Y. 635).
In sustaining the contention of the Attorney-General, however, that the intention of the testator was ‘ ‘ not to benefit either St. Thomas Church or to devote such remainder to the advancement of the religious functions or objectives of St. Thomas Church,” we think that the Surrogate exceeded the powers conferred upon him by sections 12 of the Personal Property. Law and 113 of the Real Property Law. The testator would not have named St. Thomas Church in this capacity unless part of his intention was to advance its objectives. The circumstances *426 called for the cy pres rule, but these statutes require that the direction made shall be such as “ will most effectually accomplish the general purpose ” of the testament, where due to change in circumstances a literal compliance has become ‘ ‘ impracticable or impossible ’ In the construction of wills ‘ ‘ ‘ where the intent of the testator is to be ascertained from his language alone, or from his language and surrounding circumstances about which there is no dispute ’ ”, the intention of the testator is “ a question of law and not one of fact ” (Matter of Potter, 307 N. Y. 504, 515, italics from original, quoting from Underhill v. Vandervoort, 56 N. Y. 242, 247; Matter of Burk, 298 N. Y. 450, 455; Williams v. Jones, 166 N. Y. 522; Ruiz v. Renauld, 100 N. Y. 256; Matter of Hier, 205 App. Div. 215, 217). In a cy pres proceeding the way may be open to more than one practical substitute for a direction by a testator which can no longer be executed, but the circumstance that there may be more than one alternative in deciding what disposition most nearly resembles that which was made by the testator does not preclude a question of law from arising concerning whether the Surrogate has exceeded his powers by overriding or failing to give effect to basic purposes of the testator as expressed in the instrument. We think that this has happened here. Every testamentary or other trust instrument stands largely on its own feet when it comes to the application of the rule of cy pres. The language and circumstances are seldom twice alike. Here the language and undisputed circumstances show that the testator was actuated by three dominant considerations: (1) that his name and the name of his family should be connected with a building erected and maintained for the benefit of mankind, which would be a tangible memorial to their public spirit; (2) that this building should be erected and maintained by St. Thomas Church in the City of New York, with which he had long been connected, as a visible symbol of its good works; and (3) that people afflicted with tuberculosis, upon whom he had compassion, should be aided in their struggles for life and health. When he executed this will in 1904 and codicil in 1911 it was customary to treat tubercular patients in sanatoriums, and it was reasonable to expect that the remainder given to St. Thomas’ would accomplish that result. Now that the number of tubercular patients has declined and the method of treatment *427 changed so that even Trudeau Sanatorium at Saranac Lake, Loomis Institute at Liberty and various other similar institutions have been discontinued, it would be impracticable in any event to give effect to the third purpose enumerated above in the manner prescribed by the testator. If that had been the i only purpose which the testator had in mind, he would have j been likely to have given the remainder directly to that type of Í institution. The Surrogate changed the testator’s direction by , substituting the care of persons suffering from ‘ respiratory and thoracic diseases ” in place of tuberculosis. The difficulty with the decision is that he concluded that the third numbered objective was the only purpose which the testator had in mind. Determining that it was not Mr. Scott’s purpose to benefit St. Thomas Church or to advance its objectives, • the Surrogate directed that the fund be administered by some other organization whose objectives presumably would be served if St. Thomas Church declined to execute what was regarded as equivalent to an ultra vires assignment. The decree erroneously directs the use of the money in a manner designed not to benefit St. Thomas Church and without memorializing the Scott family except by describing these assets as the ‘ ‘ Scott Memorial Fund” on the records of whatever organization were to administer them.
This disposition failed as matter of law, we think, to give effect insofar as practicable to the full design of the testator as manifested by his will and codicil. His purpose was not exclusively to aid tuberculars. Even that aim was found to be impractical except by broadening it to encompass all respiratory and thoracic diseases. There was an accompanying intent to promote the objectives of St. Thomas Church by assisting it to engage in good works without which faith alone is dead. Nor was it a “ selfish ” purpose, inconsistent with cy pres, to desire to perpetuate conspicuously the name and memory of the donor as a benefactor of the church and humankind. Naming a charitable fund after the Scott family on the records of whatever institution might administer this fund is of a different order of magnitude from causing a building to bear his name, as the will directs. It is not always possible to carry into effect all of the motivating factors of a program such as this testator put forward, but in the circumstances here presented we think that it *428 was an unlawful dilution of his purpose to eliminate any benefit to St. Thomas Church and any tangible memorial to himself. A. building erected and maintained by St. Thomas Church was plainly important in his calculations, in order that its light (like his own) would, in Biblical words, so shine before men so that they might see their good works. These desires are deeply ingrained in human nature and are effective motivating forces in donations of this character. Cy pres is not designed to nullify them, where, as here, it is practicable to encompass them in the decree.
We agree with the Attorney-General and with the courts below that the original contention of St. Thomas Church is invalid that it has absolute power to use this remainder for any corporate purpose, and likewise that its proposal was unjustified to devote almost all of these funds by cy pres to the church building. Nevertheless it does not follow that none should be expended on this edifice, since we are persuaded that the testator was concerned among other matters with attaching his family name* if possible, to a building or buildings maintained by St. Thomas Church. Appellant’s brief states that the church vestry has | modified its original position by adopting a resolution “that ] $350,000 be used to provide an appropriate outward and visible ; memorial on the Fifth Avenue facade of the Church, and that the income from the balance be devoted to the establishment and maintenance of a clinical program in conjunction with St. Luke’s Hospital or some other Episcopal hospital willing to provide and designate such a program as a memorial to George S. Scott and his family.”
It is not for us on this appeal to approve or to disapprove a different, specific plan from the one described in the decree, but in our judgment the program advanced by the Attorney-General and directed by the order appealed from is erroneous as matter of law in determining that it was no part of the purpose of the testator to advance objectives of St. Thomas Church and in failing to discern or deciding that it is impracticable to execute more completely the objectives manifested by the will and codicil.
The order appealed from should be reversed, with costs to appellant in all courts payable out of the fund, and the matter remitted to the Surrogates’ Court for further proceedings not inconsistent with the opinion herein.