*511 OPINION OF THE COURT
John B. Riordan, S.
This year marks the 75th anniversary of Judge Cardozo’s seminal decision in Meinhard v Salmon (249 NY 458 [1928]). The event is brought to mind because landmark decisions are rare in the trusts and estates field. The common law of this area of the law is a well settled one. It is a field where names like Cardozo and Sobel are still revered and where cases of ancient vintage are still capable of bearing the freight of modem mores and manners. That is not to say that there is no innovation to be had, as the recent decision from the First Department, Smithers v St. Luke’s-Roosevelt Hosp. Ctr. (281 AD2d 127 [2001]), illustrates. Meinhard v Salmon defined the scope of a fiduciary’s duty to his or her estate. The Smithers case makes new law, allowing a private cause of action to enforce the terms of a charitable gift. To the uninitiated, this may appear to be an insignificant development, but the holding has the potential for broad application and its implications remain to be worked out. One of those implications must be decided in this motion.
The Smithers decision in the First Department was made possible by this court’s order of December 26, 1995. Pursuant to that order, letters were issued to Adele Smithers-Fomaci as special administratrix c.t.a. of the estate of her late husband, R. Brinkley Smithers. She requested these limited letters solely to enable her to prosecute actions against St. Luke’s-Roosevelt Hospital arising from its alleged breach of its duties to the gifts made by the decedent. A conflict of interest precluded the executor of Mr. Smithers’ estate from bringing such a suit. The novelty of the application was recognized by Surrogate Radigan when he wrote:
“The court takes no position with regard to the advisability of any contemplated litigation and provided further, as the petition indicates, all funds necessary to pursue the estate’s claim against the hospital are to be advanced by the petitioner without any recompense by the estate without further order of the court.” (Smithers, Sur Ct, NY County, Decision No. 1172, Dec. 11, 1995.)
When Ms. Smithers-Fornaci commenced suit in Supreme Court, New York County, the first obstacle she encountered was a motion to dismiss her complaint, alleging that she lacked standing to enforce the terms of her husband’s gift to the hospital. The hospital and the Attorney General both took the *512 position that EPTL 8-1.1 (f) gave the Attorney General exclusive jurisdiction to enforce the terms of charitable gifts. The hospital moved to dismiss the complaint. The Supreme Court granted the motion and Ms. Smithers-Fornaci appealed. In the opinion that is now recognized as a landmark, the First Department reversed and remanded the matter to the trial court for a hearing on the merits. In so doing, the court wrote:
“The issue before us is whether the estate of the donor of a charitable gift has standing to sue the donee to enforce the terms of the gift. We conclude that in the circumstances here present plaintiff estate does have the necessary standing. * * *
“She [Ms. Smithers-Fornaci] brought [the action] as the court-appointed special administratrix of the estate of her late husband to enforce his rights under his agreement with the Hospital through specific performance of that agreement. Therefore, the general rule barring beneficiaries from suing charitable corporations has no application to Mrs. Smithers. Moreover, the desire to prevent vexatious litigation by ‘irresponsible parties who do not have a tangible stake in the matter and have not conducted appropriate investigations’ has no application to Mrs. Smithers either. Without possibility of pecuniary gain for himself or herself, only a plaintiff with a genuine interest in enforcing the terms of a gift will trouble to investigate and bring this type of action. Indeed, it was Mrs. Smithers’s accountants who discovered and informed the Attorney General of the Hospital’s misdirection of Gift funds, and it was only after Mrs. Smithers brought her suit that the Attorney General acted to prevent the Hospital from diverting the entire proceeds of the sale of the building away from the Gift fund and into its general fund. * * *
“The donor of a charitable gift is in a better position than the Attorney General to be vigilant and, if he or she is so inclined, to enforce his or her own intent. * * *
“Moreover, the circumstances of this case demonstrate the need for co-existent standing for the Attorney General and the donor. * * *” (Smithers v St. Luke’s-Roosevelt Hosp., 281 AD2d at 128, 138-139, 140.)
Having won her initial battle in the First Department, Ms. Smithers-Fornaci now returns to this court and requests the *513 restrictions in her letters be removed so that she can be compensated for her efforts. Her application was made by order to show cause, which included a stay of the signing of a proposed decree of the executor of Mr. Smithers’ estate in his accounting. The executor does not oppose this application, nor do the trustees of a marital trust (established with a one-third share of the residuary) or the Christopher D. Smithers Foundation (also a one-third share of the residuary). The only opposition comes from the beneficiaries of the remaining one third of the residuary and the Attorney General. The following facts are relevant to this decision.
The decedent, R. Brinkley Smithers, died on January 11, 1994, a resident of Nassau County. His will was admitted to probate and letters testamentary issued to Henry S. Ziegler on May 31, 1994. While Mr. Smithers was a man of great wealth, he was better known for his enormous dedication to charitable causes. His life’s work was focused on the study and treatment of alcoholism as a disease. To that end, he established a self-endowed fund at St. Luke’s-Roosevelt Hospital to establish an alcoholism treatment facility. The gift to the hospital came with certain restrictions. For example, Mr. Smithers believed that the treatment of alcoholism required a tranquil setting far removed from the traditional detoxification wards of a hospital. A total of $10 million was given to the fund during Mr. Smithers’ lifetime. In 1973, the Smithers Alcoholism Treatment and Training Center opened at 56 East 93rd Street in Manhattan. The center became a world famous facility for the treatment of this disease. A dispute arose between Mr. Smithers and, later, his widow over the hospital’s administration of the gift.
Mr. Smithers’ will displayed an equally charitable concern. Several substantial bequests were made to various alcoholism-related charities. The probate estate was valued in schedule A of the executor’s account at approximately $35,000,000. The residuary estate amounted to approximately $14,000,000. It was divided into the following parts. One third of the residuary estate was used to fund the marital trust for the benefit of Adele Smithers-Fornaci. A remote contingent remainder beneficiary of this trust is the Christopher D. Smithers Foundation, a charitable concern dedicated to the study and treatment of alcoholism. Another third of the residuary was given outright to the Smithers Foundation. Two ninths of the residuary was divided equally over seven charitable remainder annuity trusts for the life income benefit of members of the decedent’s family. The remainder interest of each trust is the Smithers *514 Foundation. Finally, one ninth of the residuary was left to the Health Promotion Foundation, a family established charity whose work is self-evident.
It is fair to say that none of these residuary beneficiaries received any pecuniary benefit from the litigation that generated the requested fees. Nevertheless, the litigation in the First Department was clearly motivated by a desire to see that the wishes of the decedent were accomplished. Of these residuary beneficiaries, the only ones to oppose reimbursement are the Health Promotion Foundation and the trustees of the seven charitable remainder annuity trusts. Another opponent of this application is the Attorney General.
The significance of Smithers v St. Luke’s-Roosevelt Hosp. Ctr. (281 AD2d 127 [2001]) lies in its rejection of the Attorney General as the exclusive agent to police charitable gifts. By ruling that Ms. Smithers-Fornaci had standing to pursue the hospital, the First Department made new law and expanded the enforcement possibilities in the immense field of charitable giving (Americans donated $150 billion to charity in 1996, and 80% of these funds came from individuals [Note, Protecting the Charitable Investor: A Rationale for Donor Enforcement of Restricted Gifts, 8 BU Pub Int LJ 361, 380 (1999)]). This court refers the reader to the First Department’s opinion for a complete recitation of the lengthy facts. Suffice it to say, the diligence of the predecessor to the current Attorney General was far from satisfactory and was undoubtedly the salient factor in the court’s holding. Referring to many millions of dollars diverted from the Smithers endowment, the First Department wrote: “It may be observed that it was only Mrs. Smithers’s vigilance that brought this to light, since apparently the Attorney General had no procedure in place by which to insure compliance by the donee.” (Smithers v St. Luke’s-Roosevelt Hosp., 281 AD2d at 134.)
This is a case of first impression, at least insofar as the facts fall between two well-settled principles of trusts and estates law. On the one hand, a fiduciary is entitled to engage the services of counsel in connection with the performance of his or her duties and to have those services reimbursed as reasonable administration expenses (SCPA 2110 [1]). However, fees that are expended for the personal benefit of the fiduciary or services that do not benefit the estate are not compensable from estate funds (Matter of Driscoll, 273 AD2d 381 [2000]). In this context, the word “benefit” has been usually defined as the “pecuniary advantage” gained from the legal services (Matter *515 of Burns, 126 AD2d 809 [1987]). While Ms. Smithers-Fornaci could gain no pecuniary advantage from her litigation against the hospital, it is also true that the decedent’s probate estate had no direct economic stake in the hospital proceedings either. However, it is also true that Ms. Smithers-Fornaci undertook this litigation with the best of motives, desiring nothing more than to vindicate her late husband’s life’s work that was allegedly being ignored by St. Luke’s-Roosevelt Hospital.
Although not addressed by the parties, the court can certainly imagine a situation that would directly implicate the estate. The conduct of St. Luke’s-Roosevelt Hospital appears to be of such an egregious nature that it is conceivable that a court could rule that Mr. Smithers’ gift to the hospital was entirely frustrated and that the gift should fail. As expert commentators have noted, “if the hospital’s breach of the conditions imposed by Mr. Smithers is fatal, and the gift fails, then the court would be asked to exercise its cy pres power to save the charitable disposition. Mr. Smithers’ fiduciary would be a necessary party to a cy pres proceeding because absent such relief being granted, the assets would revert back to his estate” (C. Gibbs and C. Carew, Standing in Trusts and Estates: New Frontiers, NYLJ, June 14, 2001, at 3, col 1). Of course, these facts are not before the court. Nevertheless, the court believes there are compelling policy reasons to grant the relief.
Normally, the pecuniary benefit analysis is a sound basis upon which to decide issues of this sort because it so closely corresponds to the nature of the duty owed by the fiduciary to his or her estate. However, there are well-recognized exceptions to this rule that are supported by equally valid policy considerations. For example, the costs of a contested probate proceeding may be awarded to the unsuccessful proponent when the instrument offered for probate is rejected (SCPA 2302 [3] [a] [2]). The statute reflects the state’s policy to encourage good-faith efforts to give expression to the presumed interest of the decedent. As Judge Cardozo wrote, “Not the outcome of the contest, but the good faith of the proponent is the statutory standard” (Matter of Staiger, 249 NY 229, 234 [1928]).
It is also true that in a proceeding to construe a will the court may award counsel fees to a fiduciary or any party to the proceeding (SCPA 2302 [5]). The policy advanced by this statute is the assistance to the court that is derived from the efforts of the parties in determining the intent of the testator, even if the result proves inimical to some portion of the estate, for example, the residuary beneficiaries (cf. Matter of Great- *516 singer, 67 NY2d 177 [1986]; Matter of Gibson, 10 Misc 2d 282 [1957]).
Just as there are valid policy reasons supporting the preceding holdings, the court believes there are also compelling policy reasons supporting the instant application of the special administratrix c.t.a. All the commentators on the Smithers decision recognize its novelty and landmark status (see, e.g. D. Samuels, Outside Counsel; Restricted Gifts to Charities, NYLJ, July 1, 2002, at 4, col 4; C. Gibbs and C. Carew, Standing in Trusts and Estates: New Frontiers, NYLJ, June 14, 2001, at 3, col 1; F. Serbaroli, Court Curbs Attorney General’s Foray into Health Care, NYLJ, May 30, 2001, at 3, col 1; J. Welsh, 2001-2002 Survey of New York Law: Estates and Trusts, 52 Syracuse L Rev 375, 394). To deny this court the right to award reasonable counsel fees to this fiduciary would vitiate the right of a private cause of action created by the Appellate Division. Of course, the fiduciary does not possess a blank check to frolic far afield from her duties to the estate. The court never loses the right to examine a request for attorney’s fees and each case must be decided on the unique facts presented (Matter of Stortecky v Mazzone, 85 NY2d 518 [1995]; Matter of Freeman, 34 NY2d 1 [1974]). However, the reasoning of the First Department seems to authorize the entitlement to fees when it writes:
“As the Court of Appeals has observed, a donor’s desire to perpetuate his name as a benefactor of a particular charitable institution and humankind is not a selfish one (Matter of Scott, 8 NY2d 419, 427 [1960]). ‘These desires are deeply ingrained in human nature and are effective motivating forces in donations of this character’ (id. at 428). Perpetuating the donor’s good name is certainly also a profound concern of his or her estate.” (Smithers, 281 AD2d at 140.)
For the foregoing reasons, and the unique nature of the facts in this case, the court grants the application of the special administratrix c.t.a. to be reimbursed from estate assets for reasonable counsel fees arising from her litigation in New York County and in the Southern District of New York (the fiduciary commenced an action there over the hospital’s alleged trademark infringement and dilution). The court reserves the right to determine the reasonableness of the fees claimed, particularly in light of the fact that the trademark infringement claims have been dismissed in their district court and state court forums (see, respectively, Christopher D. Smithers Found., Inc. *517 v St. Luke’s-Roosevelt Hosp. Ctr., 2003 WL 115234, 2003 US Dist LEXIS 373 [SD NY, Jan. 13, 2003]; Smithers v St. Luke’s-Roosevelt Hosp. Ctr., Sup Ct, NY County, May 21, 2002, Index No. 98-604895, slip op at 12). The court notes that there is also opposition to the quantum of fees claimed and that there has been no waiver of a hearing as to that issue (22 NYCRR 207.45 [a]). Therefore, the parties will appear in court to discuss this issue at a conference scheduled for Wednesday, April 30, 2003, at 9:30 a.m. In the meantime, the court recommends the proposed decree go forward with a sufficient amount held in reserve (SCPA 2217) to cover the amount of fees claimed by the special administratrix c.t.a.