William E. McClusky, J.
This is a proceeding under section 113 of the Real Property Law. It came on before this court on November 18, 1958 and was adjourned for the taking of testimony therein to March 3, 1959. Upon the adjourned date the petitioner, the Attorney-General, Arthur Barns as special guardian for unknown Faxton heirs, Evans, Pirnie & Burdick, attorneys for J. P. Stevens Co., Inc., one of the named respondents, and Fitzgerald & Fitzgerald as attorneys for the Knights of St. John, appeared.
By chapter 762 of the Laws of 1950, the Education Law of the State of New York was amended by the addition of article 51. This amendment in substance provided for the autonomy of city school districts of cities having a population of less than 125,000 according to the latest Federal census. In effect this chapter included all the cities of this State except New York, Buffalo, Rochester, Syracuse, Yonkers and Albany. Section 2502 of the said law provides in subdivision 1 that “ The board of education of each city school district shall constitute a body corporate.” Section 2503 of the Education Law prescribes the powers and duties of the Board of Education and under subdivision 6 thereof the board is charged with the care, custody, control, safekeeping and maintenance of all school property used for educational, social or recreational work of the district. Section 48 of chapter 762 of the Laws of 1950 provided that the title to all real and personal property acquired prior to the effective date of the act (July 1, 1951) by a city of less than 125,000 and which was under the exclusive control of the school authorities including school sites, school buildings, etc., was vested in the newly established city school district. Such board was vested also with the power to sell any sites under certain conditions pursuant to section 2511 of the *194 said law. Among the properties owned by the City of Utica at the time were a lot and building known as ‘ ‘ Paxton Hall ’ ’.
The name Paxton is unusual but it is borne by a street, a hospital and the building herein involved in the City of Utica. This repetition obviously emphasizes the name of one who contributed something to the founding or progress of the city. Theodore S. Paxton was an industrialist, who in addition to being successful, was in foresight far beyond the industrialists of his day. He founded two knitting mills in Utica known as the Globe Woolen Company and the Utica Steam Cotton Mills. He had been Mayor of Utica and had been chief founder of one of the city’s famous hospitals, viz.: Paxton Hospital. His concern for the youthful employees of his plants was evidenced by his endeavor to provide for the education and cultural improvement of his apprentices between the ages of 12 and 16 years. He erected at his own expense a two-story brick building at the corner of Yarick and Court Streets in Utica upon property then owned by him and his wife. The building was and is a brick structure known as 815 Yarick Street, erected on a lot with an approximate frontage of 88 feet on Yarick Street and 119 feet on Court Street. Across the street from the premises was located the woolen mill.
Irene M. Paxton, wife of Theodore Paxton, predeceased her husband. He died testate on November 30, 1881 and his will was admitted to probate by the Surrogate of Oneida County on February 22, 1882. He was not survived by any children or descendants of children and by no brother or sister but by several nieces and nephews. In his will, he provided a bequest of $2,500 for the purpose of founding a library in Paxton Hall and the School Commissioners were empowered to receive and invest the money to carry out the wishes of the testator.
The indenture herein involved contained a recitation that the second floor of Paxton Hall was to be used for library purposes and reading rooms for the use and benefit of the people employed in the mills mentioned and their families. The management of the 'library was entrusted to the president, vice-president and superintendent of each of the two companies previously mentioned for the time being. Mr. Paxton was at the time of the grant president of the Globe Woolen Company and a director of the Utica Steam Cotton Mills. Subsequently Textron, Inc., acquired control of the Globe Woolen Company and J. P. Stevens Co., Inc., acquired control of the Utica and Mohawk Steam Cotton Mills. The plants were closed during the fore part of this century, the mills dismantled and neither company conducts nor has conducted any textile or other busi *195 Mess at the plants in Utica for many years. There are consequently no operatives in the mills. Operations, if conducted at all, are conducted outside the County of Oneida.
In any event the deed of gift by Theodore Paxton and his wife was accepted by the City of Utica by a resolution of the Common Council adopted at a regular meeting on January 24, 1868. The deed was recorded in the Oneida County Clerk’s office in Book 282 of Deeds at page 68, etc. At that time public school education was vested in a department of city government known as the Commissioners of the Common Schools of the City of Utica. The name of the department was changed from time to time before it became a separate entity (of. L. 1950, ch. 762). Eventually the title to Paxton Hall passed to the petitioner herein.
The Commissioners of the Common Schools absorbed Paxton Hall into the city’s educational system. The first year it was in use was in the school year of 1868-69. The records showed in attendance 117 boys and 57 girls. It was used as a day school from 1868 until 1917. It was used chiefly for the primary grades. In 1894 when kindergartens were first introduced into the school system, it was used likewise for kindergarten classes. It was used likewise as an evening school from around 1869 through 1897. Problems arose with reference to the evening classes which cast an interesting light upon the milieu. The pupils worked in the neighboring mills during the day and were somewhat tired in the evening for the work day was not an 8-hour day but 10 or 12 hours. (Cf. Elements of Sociology, Ross, chs. 1-10.) ' In the Superintendent’s report of 1878-79, it. was noted there were 107 boys and no girls in attendance. The absence of females was attributed to the fact of the exceedingly annoying and reprehensible practices indulged in by the boys and youth, ‘ ‘ who nightly congregate on street corners or infest public thoroughfares, ever ready, in the absence of police, to offer uncivil remarks or insolent attention to pupils of.evening school.” The problem of lack of attendance of boys was attributed to ‘ ‘ fatigue after the days work, disinclination to study and attractive places of resort in saloons and places of amusement ”. The school work, however, gradually occupied the whole building. When the school board received the bequest from the estate of Theodore Paxton, it was found that the rooms on the second floor were not suitable for library purposes. The School Commissioners, upon consultation with the executors, decided to set apart one or more alcoves in the city library, located on Elizabeth Street, a few blocks distant from *196 the site of Faxton Hall. In 1893 the Faxton Hall Association was organized and the second floor of the building was placed in its care for library purposes. In 1904 a new public library was erected in Utica. In 1905 the officers of the Grlobe Woolen Company and the Utica Steam Cotton Mills executed a document (dated Sept. 22, 1905) wherein they recognized the-changed conditions relative to the use of the second floor of the building for a library and consented that the second floor be used for school purposes upon certain conditions with reference to restoration of use. Thereafter and until 1912 the entire building was used for kindergarten, primary and intermediate grades. A special use of the scond floor was made in 1912. It became a school for “ open window classes Special care and facilities were afforded to tubercular children and those recovering from contagious diseases. However, this use was discontinued and the children transferred to similar facilities at the Kernan School in the same neighborhood. All the children from Faxton Hall were transferred to Kernan School in 1917. Thereafter the building was not used for school purposes. In fact in 1917 the Utica Public Library requested the use of the building for library purposes. This was granted upon the opinion of the Cox-poration Coxxxxsel. The building was used as a branch library uxxtil sometime ixx the 1930’s. It was then used as a day xxursery until sometime iix 1956, when it was leased to the Kxxights of St. Johxx, a fraternal organization, under axx optioxx to purchase.
From the evidexxce submitted it is clear that the mills, which were so prominently identified with the structure and the aims of its doxxors, no longer exist in Utica. The operatives have ceased their employment. The children of the former operatives, if living in the neighborhood, are educated at Kernan School. The plants themselves are no longer used in the textile industry. The character of the neighborhood has changed until today it is largely small business, light industry and mercantile in its nature.
The labor laws of the State of New York now forbid the employment generally of youths under 16 years of age. The textile industry has migrated from the area. What is more important is the expressed opinion of the Superintendent of Schools of Utica that the building and lot are exxtirely inadequate for any school purpose, not only because of the building and size of the lot but because of the safety problems involved and other facilities in the general area. The Board of Education is indeed faced with a problem. Its only recourse was an application under section 113 of the Beal Property Law.
*197 We now come to a consideration of the terms of the grant. A large portion of the instrument is devoted to an expression of the intent of the donors, hut nowhere does the instrument provide for a re-entry in the event of failure of performance of any of the conditions. The courts are reluctant to construe a grant as giving the grantor or his heirs a right of termination. The language must clearly express that reservation. (Woodworth v. Payne, 74 N. Y. 196.)
A reversion is defined as the residue of an estate left in the grantor to commence in possession after the determination of some estate granted out by him. (Real Property Law, § 39; 31 C. J. S., Estates, p. 125; Duff v. Rodenkirchen, 110 Misc. 575, affd. 193 App. Div. 898.)
The language employed in the instrument under examination herein is devoid of any word of reverter. In fact it is replete with expressions indicating perpetuity, not only in divesting the donors of their title but also in prescribing the' use to be made. Consequently it is clear that a charitable gift was intended and that it vested in the City of Utica with the management thereof vested in the Commissioners of the Common Schools. It is well settled that in such a situation the charitable gift, once vested, will not revert to the heirs of the testators or grantors even in the event of nonuser or misuser of the fund or property unless the instrument itself expressly provides for reverter or gift over. (Matter of Fletcher, 166 Misc 486; Stewart v. Franchetti, 167 App. Div. 541; Matter of Scott, 1 Misc 2d 206.)
Conditions subsequent with a right of re-entry are not favored in law because they tend to destroy estates or make them insecure. (Rose v. Hawley, 118 N. Y. 502.)
Perhaps the latest expression of the attitude of the courts is that so succinctly stated by Mr, Justice Ringrose in Matter of Hendricks (1 Misc 2d 904, affd. 3 A D 2d 890).
This court reaches the conclusion, therefore, that the deed of gift herein did not contain any condition subsequent or provision for reverter. It is such an educational or charitable gift as under the circumstances requires the application of the so-called cy pres doctrine as expressed in section 113 of the Real Property Law.
The phrase “ cy pres ” is Norman-French in origin and means literally “ as near to ”. It is an equitable principle of construction. It may be enunciated as that principle which enables a court to carry out the main purpose of a donor of a charitable trust as nearly as may be where it cannot be done to the letter.
*198 In Levy v. Levy (33 N. Y. 97) it was held that the “ cy pres ” doctrine had been abolished in this State. This decision was rendered in 1865. The deed granting the premises herein conveyed to the City of Utica, was a studied attempt to circumvent the specific objection in the Levy case. Every criteria set up therein for testing the devise in Levy’s will was carefully met in the Faxton deed. It was also an attempt to comply and a successful one in accordance with the Act of 1840 (L. 1840, ch. 318, § 2) which provided that “Real and personal estate may be granted and conveyed to the corporation of any city or village of this state, to be held in trust for any purpose of education, or the diffusion of knowledge ’ ’ etc. The same act also provided (§ 3) that such property might be granted to the Commissioners of the Common Schools of any town. By implication a grant to a city under the act for the same purposes for which it might be made to the Commissioners of the Common Schools of a town was valid.
The Court of Appeals in this State has had occasion recently to pass upon the application of the cy pres doctrine. Concededly under the Laws of 1893, known as the Tilden Acts, viz., section 12 of the Personal Property Law and section 113 of the Real Property Law, the principles of the equitable doctrine of cy pres have been expressed in statutory form.
In Matter of Syracuse Univ. (Heffron) (3 N Y 2d 665) it was distinctly held that cy pres will not apply where the gift was not for the benefit of humanity at large but to benefit humanity through a specific agency only. But the Heffron case is distinguishable from the case at bar. In the instant case, Faxton did not require a specific act within a time limit. No conditions were imposed upon the City of Utica before the gift became effective. Furthermore Faxton did not limit the beneficiaries of Ms charity but provided for the education of other than “his ” operatives and their families. This indicates a general charitable trust which took effect at once.
The Court of Appeals in Matter of Potter (307 N. Y. 504) held that a gift of $6,000 in trust for the exclusive education of the children of the poor in an academy at Huntington, New York, was properly a subject of cy pres.
Litigation arose involving the gift (Williams v. Williams, 8 N. Y. 525) which resulted in holding that the doctrine of cy pres applied to a gift such as this. The Court of Appeals held that the testator’s charitable intent was general and was not limited to a specific structure. That case was somewhat similar to the situation in the case at bar.
*199 The case law of this State indicatés that where there is a gift or grant to city, town or board of education for purposes of a general charitable or educational nature, the title' vests in the devisee or grantee and the conditions of the trust must be carried out. But where circumstances change so that it is no longer possible or practical to carry out the terms of the trust, a case is made out for the application of the cy pres doctrine. It is largely a matter of construction for the court to which the petition is addressed. (Board of Educ. of Hempstead v. French, 8 Misc 2d 208; Matter of Breckwoldt, 176 Misc. 549; Matter of Everson, 268 App. Div. 425; Matter of Byrne, 71 N. Y. S. 2d 359.)
Having reached the conclusion that there was a valid general charitable trust created by Theodore Faxton in the deed mentioned, we come to the question as to. whether or not the court should exercise its discretion herein. From the statement of the facts herein it is abundantly clear that the locale of Faxton Hall has completely changed. The mills as such no longer exist in Utica. The operatives and their families have moved from the neighborhood. Presently there are no employees of the mills in existence. The changed economic and social conditions have been met by the Board of Education of Utica establishing a new and larger public school in the general neighborhood for the education and cultural advancement of. the children of the vicinity.
Furthermore, modern traffic conditions, at the intersection where the premises are located, render it hazardous for the operation of a school at that place. The Board of Education has no present need or use for a facility such as Faxton Hall in that area of Utica.
The officers of the Globe Woolen Mill and Utica Steam Cotton Mill and their successors have not interposed any objection to the proceedings herein.
The court holds, therefore, that the carrying out of the intent of Theodore Faxton is presently impossible at Faxton Ha'll.
Testimony has been offered that the market value of the property is approximately $10,500. It likewise appears that the premises have been leased to the Knights of St. John, Commandery 41 and Ladies Auxiliary 156, Home, Inc., at a rental of $50 per month and maintenance with the option to purchase at a price of $9,500 which was later raised to $10,500. The Knights of St. John have stated in open court their desire and intent to exercise the option in the event the court directs a sale. Attempts have been made to sell to other prospects *200 but they have failed. Accordingly the court directs that the Board of Education shall sell the premises to the aforesaid fraternal organization for a sum of not less than $10,500 and to deliver a deed therefor.
From the proceeds of the sale with any accumulations thereof, there shall first be paid the expenses of this proceeding. Thereafter, the Board of Education shall provide a suitable metal plaque to be installed in the library at Kernan School in Utica or in its successor, inscribed in such a way as to indicate that the section or sections of the library are set aside to carry out the gift of Theodore M. Faxton and wife to the City of Utica, made December 27, 1867 and to perpetuate the intent therein expressed. The Board of Education is to maintain a suitable section or sections of the library at the school mentioned.
The balance of the principal, realized upon the sale, is to be invested by the said board and the accumulations of interest thereon are to be used annually to purchase books for the Faxton section of the library at Kernan School.
It is the court’s intent that the plaque and sections of the library at Kernan School shall visually honor the donors and to thus carry out as near as possible the expressed intent of the donors to provide facilities for the people of Utica and their children ‘ ‘ for the moral and intellectual improvement of ■the people and to be forever open and free to them for their objects”. (Cf. language of grant.)
This decision is in lieu of the findings required under section 440 of the Civil Practice Act. Prepare decree accordingly.