RALPH H. DE PEW et al., Appellants, v. UNION FREE SCHOOL DISTRICT No. 4 OF THE TOWNS OF ORANGETOWN and CLARKSTOWN, Respondent.

Second Department, April 16, 1973.

*Bleakley, Platt, Schmidt, Hart & Fritz* (*Frederick J. Martin, Frederick G. Schmidt* and *Arthur P. West* of counsel), for appellants.

*Spencer & Tunstead* (*Edgar A. B. Spencer* of counsel), for respondent.

HOPKINS, J. The plaintiffs' complaint alleges that Peter De Pew, their predecessor in interest, conveyed premises in Rockland County in 1852 to the trustees of a school district, the predecessor in interest to the defendant, by a deed containing the following language: " To have and to hold all and singular the above mentioned and described premises together with the appurtenances unto the said parties of the second part Trustees as aforesaid and their successors in office forever in trust that they shall erect or build or cause to be erected or builded thereon, a house to be used as a school house for the education of the Children residing in the above mentioned School District and in further trust and confidence that they shall at all times forever hereafter permit a school to be kept in said house belonging to the above said District, And the said parties of the second part do hereby agree that they will make and keep in order all the fence where it joins on the land of the said parties of the first part and their heirs."

The plaintiffs further alleged that the defendant determined, in September, 1968, that neither the building nor the location was suitable for a public school; that the premises were no longer used as a school; and that the defendant intended to sell the property. The complaint then alleges that the trust upon which the premises were conveyed has been fully executed and, accordingly, the plaintiffs are entitled to judgment declaring that they are the owners of the premises and should be granted immediate possession.

The defendant moved to dismiss the complaint for failure to state a cause of action (CPLR 3211, subd. [a], par. 7). The Special Term granted the motion; and the judgment entered holds that the deed created a charitable trust for educational purposes which has not terminated, but is subject to cy pres (EPTL 8–1.1, subd. [c]). We reverse the judgment and deny the motion. Whether the cy pres doctrine applies to the conveyance is a question of fact to be decided at a trial.

310

Several reasons underlie our decision. First, cy pres may not be applied unless it appears that the creator of the trust had a general charitable intent as opposed to a special charitable intent (*Matter of Syracuse Univ.* [*Heffron*], 3 N Y 2d 665, 668; 4 Scott, Trusts [2d ed.], §§ 399, 399.3, 401.1, 401.2). The issue under this consideration is whether De Pew intended to benefit education generally within the school district or, instead, intended merely that the benefit conferred was limited to the use of the land as a school.

When the language of the conveyance is examined, it is at once apparent that conflicting inferences of intent can be drawn. In favor of a general charitable intent is the absence of a reversionary clause and the direction to the grantees to hold the premises " forever in trust ". In favor of a special charitable intent is the direction to the grantees that " in further trust and confidence " they shall " forever " permit a school to be kept on the premises and the direction to the grantees to maintain the fence on the property.[1] Other badges of intent are discussed in the cases and authorities (see *Board of Educ. of Union Free School, Dist. No. 10, Town of Greenburgh v. Reilly*, 71 App. Div. 468; *Matter of Goehringer*, 69 Misc 2d 145, 147–150; 4A Powell, Real Property, par. 587, pp. 564.63–564.75).

We do not think that a determination of intent should be made from the deed alone, without the presence of the surrounding circumstances concerning the execution of the deed. Perhaps the lapse of over a hundred years will prevent the production of evidence shedding light on this issue; on the other hand, we should not assume that this will be the case. School district minutes may still be available; and sometimes families keep letters, diaries or other papers bearing on important transactions, particularly with respect to the conveyance of land. In any event, this determination should not be made on the pleadings, without the opportunity to flush out the proof.

Second, the intent of the grantor should be ascertained in the light of the state of the law as it existed in 1852. A statute enacted in 1840 authorized the creation of trusts for the bene-

1. Although it does not appear in the record before us, the briefs of the parties state that a money consideration was paid for the conveyance of the land. This is an ambiguous circumstance, cutting both ways, for and against a general charitable intent. The money may have induced a reluctant grantor to convey his land only for a school house, or it may have been the principal reason for the conveyance, and the trust merely secondary.

fit of a school district (L. 1840, ch. 318), but limited the duration of the trusts "for such time as may be necessary to accomplish the purposes for which they may be created."[2] But it was a much debated question of the time whether charitable uses, including the application of cy pres, had been implanted in New York through English law.

In 1853 — a year after the conveyance under examination — *Williams* v. *Williams* (8 N. Y. 525) held that the English principles of charities were in force in New York. Twenty years later that holding was in effect overruled (*Holmes* v. *Mead*, 52 N. Y. 332) and by the time of 1893 it was thought necessary to adopt legislation to preserve and enforce charitable trusts (the Tilden Act [L. 1893, ch. 701]; see discussion in *Holland* v. *Alcock*, 108 N. Y. 312; *Allen* v. *Stevens*, 161 N. Y. 122). This legislation, it is said, restored the law of charitable trusts as it existed under the holding of *Williams* (*Trustees of Sailors' Snug Harbor* v. *Carmody*, 211 N. Y. 286; cf. *Matter of Merritt*, 280 N. Y. 391; *Matter of Potter*, 307 N. Y. 504). Other precedents, more doubtful in authority, have said that the statute is not retroactive (*Murray* v. *Miller*, 178 N. Y. 316; *Fairchild* v. *Edson*, 154 N. Y. 199; *Trowbridge* v. *First-Stamford Nat. Bank & Trust Co. of Stamford*, 182 Misc. 180, affd. *sub nom.* *Trowbridge* v. *Trowbridge*, 268 App. Div. 768, affd. 294 N. Y. 785).[3]

These variations in opinion stress the need for greater investigation into the intent of the grantor in making the conveyance in 1852, viewed in the light of the condition of the law at the time. Did, for example, the trustees of school districts have the power of condemnation and was this a factor in the framing of the conveyance? (Cf. Ann. 71 ALR 2d 1071.) And could a transfer of real property for school purposes be made directly to a school district or was it required that it be made to the trustees individually? (Cf. *Robie* v. *Sedgwick*, 35 Barb. 319, affd. 4 Abb. Ct. App. 73; Education Law, §§ 406, 407, 1709, subd. 12.) Moreover, it was apparently not unknown at the time to use trust language to denote a fee limitation (e.g., *Mayor* v. *Stuyvesant's Heirs*, 17 N. Y. 34; cf. *Miller* v. *City of Columbia*, 138 S. C. 343; *Town of Winchester* v. *Cox*, 129 Conn. 106). Was the grantor's intent, then, to

---

2. Compare the present provisions in section 3701 of the Education Law; EPTL 8–1.2, subd. (d).

3. *Matter of Faxton* (18 Misc 2d 192) held that cy pres was applicable to an 1868 deed, but did not consider whether the state of the law in effect in 1868 controlled the interpretation of the provisions of the deed.

convey a determinable fee — a limitation usually characterized by granting the fee only " so long as " the property was used for the special purpose? (See, e.g., *Upington* v. *Corrigan,* 151 N. Y. 143; *First Ref. Dutch Church* v. *Croswell,* 210 App. Div. 294; 2 Powell, Real Property, par. 187.)

We do not mean to say that, if it be found at the trial that the grantor possessed the general charitable intent to provide benefits to education, cy pres cannot be applied to effectuate that intent by a direction by the court as to the manner in which the trust shall now be conducted. We are rather of the opinion that the intent of the grantor must indeed be determined after a trial and that at the trial such intent should be judged against the background of conditions existing at the time of the grant, including the understanding of the parties as to the law.

Finally, as a third reason for a trial, we think that the Attorney-General should be a party to the litigation (*Matter of McIntyre,* 257 App. Div. 972, app. dsmd. 281 N. Y. 817; cf. EPTL 8–1.1, subd. [b]; 8–1.4, subd. [e], par. [1]). We think, too, that in the event cy pres be determined by the court to be applicable, at least a hearing should be held as to the disposition of the property and the proceeds of any sale (see EPTL 8–1.1, subd. [c]; 8–1.1, subd. [g]).

For these reasons, we reverse the judgment, on the law, with $20 costs and disbursements, and deny the motion to dismiss the complaint.

RABIN, P. J., MUNDER, MARTUSCELLO and SHAPIRO, JJ., concur.

Judgment of the Supreme Court, Rockland County, entered April 28, 1972, reversed, on the law and motion denied, with $20 costs and disbursements.