*345 OPINION OF THE COURT
Anthony A. Scarpino, Jr., S.
The petitioner, coexecutor of the estate of Phillip B. Thurston (decedent), brings this application pursuant to SCPA 1420 for an interpretation of paragraph Fourth of decedent’s last will and testament. The will was executed on January 28, 1978, and admitted to probate on April 25, 1986, after the death of the testator on April 3, 1986. After eight modest bequests to friends and relatives, decedent directed that his residuary estate be divided among 11 specific charitable beneficiaries. The petitioning executor has been unable to locate two of the beneficiaries, and brings this proceeding seeking to terminate the bequests to these beneficiaries and divide the funds between the nine other legatees. The two organizations which could not be found are Girl’s Town of the Florence Crittendon League, Inc. (Crittendon), and Wiltwyck School (Wiltwyck), organizations which offered services to troubled youths. Organizations claiming to be the successors to Crittendon and Wiltwyck have appeared and opposed the petition.
Petitioner is the attorney who drafted the will in accordance with the testator’s instructions that he wished to benefit only the 11 organizations specifically mentioned in the will, all charitable or fraternal in purpose. The residuary estate available for distribution in 1989 was $140,000, of which the executor distributed $63,000 to the nine beneficiaries which he had located. The amount presently available to be divided has risen to about $140,000, due to accrued interest income.
Petitioner asks that the court find that the bequests to Crittendon and Wiltwyck have lapsed, because the doctrine of cy pres does not apply here. He requests that the court direct that the funds remaining be divided among the nine named beneficiaries which are still functioning, asserting that limiting the distribution to the nine charities which remain viable would more fully implement the testator’s plan of benefiting only organizations which he had selected. The Office of the Attorney General has appeared but takes no position as to the relief sought. The petition is denied and distribution ordered in accordance with the following directions.
The petition has been answered by two entities which assert that they are the respective successors of Crittendon and Wiltwyck. Community Funds, Inc. (Community) maintains that it is the successor to Wiltwyck, pursuant to an order of the United States Bankruptcy Court for the Southern District *346 of New York. Wiltwyck filed for chapter 11 relief on August 5, 1981, and later discontinued operations. Pursuant to a court order dated July 12, 1988, Wiltwyck transferred its remaining assets to Community. Community used the funds to establish “The Wiltwyck School Fund” to benefit disadvantaged, minority children and youth. Community asserts that it, as successor to Wiltwyck, is entitled to the funds.
Leake and Watts Services Inc. (Leake) has filed an answer asserting its status as one of three successors to Crittendon, which was dissolved pursuant to an order of the Supreme Court, New York County, on November 14, 1998. That order directed the distribution of Crittendon’s assets 50% to Leake, 30% to Harlem-Dowling Children’s Service and 20% to Sheltering Arms Children’s Service. Leake asserts that Crittendon was in existence at the time of the testator’s death, so that its right to a 50% share of the funds allocated to Crittendon vested at that time.
Several statutes govern the disposition of property to charitable organizations which have ceased to function or been dissolved. Petitioner contends that cy pres (EPTL 8-1.1) is not applicable here because it requires that the donor must have demonstrated a general, charitable intent rather than the desire to benefit a particular institution, and the gift must have failed or the donor’s purpose become impossible to achieve (De Pew v Union Free School Dist. No. 4, 41 AD2d 308, 310; Matter of Othmer, 185 Misc 2d 122, 126). In this case, the testator’s expressed intent was not a general, charitable one, but an expressly stated intention to benefit only certain designated organizations (see Matter of Syracuse Univ. [Heffron], 3 NY2d 665, 669).
Section 1005 of the Not-For-Profit Corporation Law, which has been described as “quasi cy pres,” provides the procedure for distribution of the assets of a not-for-profit corporation which has been dissolved. The statute requires that the corporation wind up its affairs, fulfill its contracts, pay its liabilities and distribute its assets in a specific manner (N-PCL 1001-1013). Assets held for a type B purpose, i.e., educational, charitable, religious, scientific, literary, cultural or for the prevention of cruelty (see N-PCL 201 [b]), must be distributed according to a court ordered plan, to organizations engaged in “activities substantially similar to those of the dissolved corporation” (N-PCL 1005 [a] [3] [A]).
Section 1005 further provides that a testamentary disposition, whether made before dissolution or after it, inures to the *347 benefit of the organization designated by the court to acquire the assets, on the condition that the successor apply the funds to purposes intended by the testator. Thus, the precise timing of the dissolution proceeding does not alter the required disposition of the assets. The designated recipients were type B corporations and the court concludes that the quasi cy pres provisions of N-PCL 1005 (a) (3) (A) control the distributions to be made here (see Matter of Multiple Sclerosis Serv. Org. of N.Y. [New York City Ch. of Natl. Multiple Sclerosis Socy.], 68 NY2d 32, 35).
The court finds that the judicial order of dissolution dated November 14, 1988 determined the successors to the Florence Crittendon League and fixed the percentage of assets each entity was to take, in conformance with N-PCL 1005, and that the court order directing the distribution of the assets of Crittendon requires the distribution of the Thurston bequest to the named charities in the stated percentages (see Alco Gravure v Knapp Found., 64 NY2d 458, 462; Matter of Multiple Sclerosis Serv. Org. of N.Y., 68 NY2d at 44). Therefore, that portion of the legacy payable to Girl’s Town of the Florence Crittendon League, Inc. shall be paid: 50% to Leake & Watts, 30% to Harlem-Dowling Children’s Service and 20% to Sheltering Arms Children’s Service.
Wiltwyck School was dissolved by a Bankruptcy Court order which did not mention the Thurston legacy, although made two years after the testator’s death. However, the Bankruptcy Court transferred all of the school’s assets to Community, which has established a separate fund in Wiltwyck’s name for programs benefitting troubled and disadvantaged New York City minority children and youth, purposes to which the school had been devoted.
Considering the statutory history of this section (see Explanatory Mem on Not-For-Profit Corporation Law by Joint Legislative Comm To Study Revision of Corporation Laws, 1969 NY Legis Ann, at 139, reprinted in McKinney’s Cons Laws of NY, Book 37, at XXV) and the analysis and policies stated by the Court of Appeals in Matter of Multiple Sclerosis Serv. Org. of N.Y. (68 NY2d 32), this court finds that the bankruptcy proceeding was the functional equivalent of a judicial dissolution for the purposes of determining the proper distribution of the assets of a bankrupt not-for-profit corporation. Although the bankruptcy proceeding was not brought pursuant to New York’s Not-For-Profit Corporation Law, the court necessarily dealt with the issues raised in article 10 of the Not-For-Profit *348 Corporation Law and disposed of the school’s remaining assets in a manner consonant with the statute and the policy of New York State.
The designation of Community to accept Wiltwyck’s bequest and deposit it into the Wiltwyck School Fund conforms to the standard set by New York statutory and case law. N-PCL 1005 requires that “such disposition shall be devoted by the acquiring corporation or organization to the purposes intended by the testator, donor or grantor” (N-PCL 1005 [a] [3] [A]). Decisions of the Court of Appeals make it clear that courts choosing charitable successors should make their determinations based upon the looser standard of “whether the recipient charities were ‘engaged in activities substantially similar’ rather than the modified common-law standard — Tiest accomplish the general purposes’ ” (Matter of Multiple Sclerosis Serv. Org. of N.Y., 68 NY2d at 44). Therefore, the bequest payable to Wiltwyck shall be made to its successor, Community.
Accordingly, that part of the petition which seeks an order directing that the remainder of decedent’s estate be paid in equal shares to nine named beneficiaries is denied, and the executor is directed to pay the bequests in accordance with this decision.